**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 2:24-00143 |
| v. | ) | |
| | ) | Chief Judge Cathy Bissoon |
| SANDI KOROMA | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

After careful consideration of the submissions of the parties and the testimony and other evidence introduced at the hearing on July 22, 2026, Defendant's Motion and Amended Motion (Docs. 40, 54) to suppress evidence, resulting from his traffic stop on November 7, 2023, will be denied.

It is undisputed that State Trooper Casey ("the Trooper") had probable cause to initiate the traffic stop after he observed that the front and rear driver's side windows of the vehicle Defendant was driving were illegally tinted and that the vehicle was following too closely to the vehicle in front of it. *See* Ex. 1 at 11-13 (photos of window tint and tint meter reading); Def. Br. (Doc. 41) at 12. Defendant argues, however, that the Trooper impermissibly extended the traffic stop beyond its mission without reasonable suspicion of other criminal conduct in violation of the Fourth Amendment and the principles set forth in Rodriguez v. United States, 575 U.S. 348 (2015). This argument is unpersuasive.

The dual mission of a traffic stop is "to address the traffic violation that warranted the stop and attend to related safety concerns." United States v. Ross, 151 F.4th 487, 494 (3d Cir. 2025). Under Rodriguez, "an unlawful seizure occurs when an officer (1) diverts from the infraction-and-safety-based mission of the stop to investigate other criminal conduct, (2) in a

way that meaningfully prolongs the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion." United States v. Birry, ___ F.4th ___, 2026 WL 2452878, at *2 (3d Cir. Aug. 21, 2026) (quoting Ross, 151 F.4th at 496).

The Court finds that the Trooper did not extend the traffic stop beyond its mission until around 19 minutes into the stop, about which time the Trooper questioned the passenger/owner (Yayah Sheriff) about drugs and asked his consent to search the vehicle. *See* Ex. 3, 19:45-20:10. Prior to that time, the Trooper's actions, including, *inter alia*, attempting to identify the driver (Defendant), determining Defendant's license status, asking him and Sheriff to exit the vehicle, asking Defendant to sit in the police vehicle during the stop, asking Defendant about his travel plans, asking Defendant whether he had any weapons on him and conducting a criminal record check, clearly fell within the mission of the stop. *See, e.g.*, Ross, 151 F.4th at 495; United States v. Stewart, 92 F.4th 461, 467 (3d Cir. 2024) (questions focused on travel plans fall within the scope of a travel stop); United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003) (same); United States v. Hurtt, 31 F.4th 152, 160 (3d Cir. 2022) (noting that when evaluating whether a stop remained on-mission, courts "consider the legitimate and weighty interest in officer safety and thus will tolerate additional intrusions, such as forcing a driver to get out of a vehicle. This interest, unlike a general interest in criminal enforcement, stems from the mission of the stop itself."); United States v. Goodwill, 24 F.4th 612, 615 (7th Cir. 2022) (asking occupant to sit in the police car is on-mission); *see also* Gov't Br. (Doc. 43) at 5-10 and additional cases cited therein. Also significant here, when questioned, Defendant provided the Trooper with a false name and a false birthdate and failed to produce any driver's license, let alone a valid one. *See*

Ex. 2, 1:55; Ex. 3, 6:35-7:00, 12:23.[1] Thus, if anything, Defendant's own lack of candor and duplicity prolonged the ordinary course of events in this case.[2]

Even assuming the traffic stop went off-mission when the Trooper questioned Sheriff and requested permission to search the vehicle, the Trooper developed independent reasonable suspicion of criminal activity beyond the observed traffic violations well before that point. Reasonable suspicion is more than "a mere hunch . . . [but] considerably less than . . . a preponderance of the evidence, and obviously less than . . . probable cause." United States v. Green, 897 F.3d 173, 183 (3d Cir. 2018). It requires only a "particularized and objective basis" for suspecting criminal activity, not derived from characteristics common to the "vast majority of innocent individuals." Id. Courts must evaluate reasonable suspicion using a totality of the circumstances approach, recognizing "the particular ability of law enforcement officers, based on training and experience, 'to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Reasonable suspicion "cannot be defeated by a so-called 'divide-and-conquer' analysis, whereby each arguably suspicious factor is viewed in isolation and plausible, innocent explanations are offered for each." Id.

---

[1] Defendant's briefing misrepresents this exchange, averring that he told the Trooper that he did not have his license on him, "but provided him with all truthful and accurate information regarding who he was." Doc. 41 at 9; *see also* Doc. 54 ¶ 4. As set forth above, this statement is contradicted by the hearing testimony, video evidence and other indisputable evidence of record.

[2] The government urges the Court to apply a "forfeiture by wrongdoing" principle to the factual scenario here and extinguish Defendant's constitutional claims on equitable grounds. Gov't Br. (Doc. 43) at 11-12. Citing cases in the asset forfeiture and Confrontation Clause contexts, the Government argues that failure to find forfeiture by wrongdoing here would allow Defendant to benefit from his duplicity. *See* id. The government, however, does not cite any authority in support of extending this forfeiture concept to the Fourth Amendment traffic-stop analysis. Ultimately, it is unnecessary to resolve this issue because Defendant fails to establish a Fourth Amendment violation under the traditional framework.

Here, the Trooper credibly testified that he smelled an odor of marijuana emanating from inside the car shortly after he first approached it and a window was opened. *See also* Ex. 1 (police report), at 1; Ex. 4 (affidavit of probable cause); Doc. 41-1 at 7-8. Other factors contributing to the Trooper's reasonable suspicion included, *inter alia*, Defendant's evasiveness regarding his identity; his observed nervousness; the inconsistent answers given to the Trooper's travel-related questions; the oxycodone pills that Defendant had concealed in his sock; and the Trooper's knowledge, based on training and experience, that the road on which the vehicle was traveling (I-80) is a known drug-trafficking corridor, Defendant's origin (Cincinnati) and destinations (New Haven, Connecticut – where the car was registered – and Bronx, New York) were known drug-trafficking hubs and tinted windows are used by drug traffickers to conceal identities and contraband. Defendant's conclusory declarations that such considerations cannot create reasonable suspicion of criminal activity contravene well-established precedent. Indeed, "[i]t is well settled that the smell of marijuana alone . . . may establish not merely reasonable suspicion, but probable cause." Green, 897 F.3d at 186 (quoting United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006));[3] *see also*, *e.g.*, United States v. Stewart, 92 F.4th 461, 468-71 (3d Cir. 2024) (factors supporting reasonable suspicion to extend traffic stop included tinted windows, driving on a known drug corridor, nervous/evasive behavior, driving another's car and providing confusing answers to travel questions); United States v. Garner, 961 F.3d 264, 272 (3d Cir. 2020) (factors including traveling a known drug corridor and nervousness supported

[3] Defendant's citation to the Court of Appeals' recent decision in United States v. Outlaw, 138 F.4th 725 (3d Cir. 2025), is inapposite. Outlaw held only that the smell of marijuana in a vehicle did not establish probable cause to *arrest the driver* of a vehicle where the vehicle contained multiple occupants. *See* id. at 726. As the Court was careful to explain, "Though they are often discussed in tandem, probable cause to search is not the same as probable cause to arrest. The facts in this case *could have plausibly supported a search of [Defendant's] vehicle*. But they did not support his arrest." Id. (emphasis added).

reasonable suspicion of illegal activity). Under the totality of these circumstances, the Trooper had more-than-reasonable suspicion of independent illegal activity justifying the extension of the traffic stop, well-prior to any arguable "Rodriguez moment."

Defendant next argues that the Trooper unlawfully frisked him during the stop without reasonable suspicion that Defendant was armed and dangerous. This argument likewise is without merit. As set forth above, asking the driver to exit the vehicle falls within the mission of a traffic stop. When Defendant exited the car here, the Trooper observed a knife hanging from Defendant's waistband area. Defendant provided the knife to the Trooper, after which the Trooper patted him down for any additional weapons. Arguably, the record evidence establishes that Defendant consented to the pat-down when asked. *See* Birry, 2026 WL 2452878, at *3 (noting that the Supreme Court has long upheld consensual searches). During a traffic stop, however, such frisks are appropriate even absent consent when the officer has reasonable suspicion that a subject is armed and dangerous. *See* Arizona v. Johnson, 555 U.S. 323, 327 (2009). Objectively speaking, an officer at the scene in this case – an isolated stretch of highway where he was outnumbered 3-1 – reasonably could have concluded that, given Defendant's possession of a knife, his safety was in danger and Defendant may have been armed with additional weapons. *See* United States v. Jackson, 120 F.4th 1210, 1220 (3d Cir. 2024).

The Trooper also conducted the frisk in a lawful manner. Defendant's argument that the Trooper exceeded the scope of the frisk by lifting Defendant's pant leg around his ankle is unpersuasive. Defendant is correct that a Terry stop is intended to be a "carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault [the officer]." Def. Br. (Doc. 41) at 15 (quoting United States v. Navedo, 694 F.3d 463, 467–68 (3d Cir. 2012)). A sock, however, is within the scope of outer clothing an officer may

pat down, and does not become less so simply because a pantleg might cover it depending on one's posture. *See* Braxton v. Waterman, 836 F. Supp. 3d 667, 676 (W.D. Va. 2026) (citing United States v. Swann, 149 F.3d 271, 276-77 (4th Cir. 1998)). Moreover, the Trooper did not "remove" an item from Defendant's sock. Rather, the Trooper asked Defendant about the bulge he noticed near his right ankle, after which Defendant reached into the sock and handed the Trooper a wadded up piece of paper containing 1.5 oxycodone pills. *See* Ex. 2 at 3:00-3:54; Ex. 1 at 9; Hearing Testimony. Additionally, there is no evidence that the Trooper knew or reasonably should have known the bulge was not a weapon – such as a razor blade – before Defendant pulled out the bundled up pills.[4]

Defendant further argues unpersuasively that his statements after the Trooper placed him in the patrol car violated the Fifth Amendment because they were obtained without Miranda warnings. As the government correctly notes, the conversation in the patrol vehicle was not a custodial interrogation and, therefore, Miranda warnings were not required. Gov't Br. (Doc. 43) at 20-23 and cases cited therein. As set forth above, asking a driver or passenger to exit the vehicle and sit in a patrol car while the officer runs the car and driver information does not deviate from the mission of the traffic stop and addresses concerns for individual safety. Here, Defendant sat in the front seat of the police vehicle, was not restrained in any way, was not threatened or mistreated, freely exited the car after the conversation and even instructed the car's owner to withdraw his consent to search the vehicle. *See* Ex. 2, at 5:00 – 14:10, 20:05, 33:50.

[4] Although not necessary to the Court's analysis, the Court agrees with the government that suppressing the 1.5 oxycodone pills would not change the conclusion that the search of the stopped vehicle was constitutional. As set forth more fully herein and at the hearing, the vehicle search was independently supported by the marijuana odor, K9 alert and the other factors set forth in the affidavit of probable cause. *See* Doc 43 at 19-20 & Ex. 4.

Finally, the Trooper obtained a search warrant prior to searching the vehicle, only after which the challenged items – including cocaine, a pistol, marijuana and marijuana-related paraphernalia – were discovered. *See* Ex. 4 (search warrant application and affidavit). Defendant's attacks on the sufficiency of the warrant miss the mark. *See* Doc. 54. In addition to summarizing the Trooper's relevant training and experience, the Affidavit details the Trooper's observations while conducting the traffic stop, including the odor of marijuana. *See* id. After examining the contents of the affidavit and the warrant, as well as the arguments, evidence and testimony set forth by the parties, the Court finds that the government's arguments are sound and that the warrant is supported by probable cause. The issuing judge was entitled to draw reasonable inferences from the affiant's statements, and, as detailed by the government, the information contained within the four corners of the affidavit demonstrates a fair probability that contraband or evidence of a crime would be found in the vehicle. The law requires nothing more to properly issue a search warrant. *See* United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010).[5] Defendant's suggestion that the factors set forth in the warrant fail to create reasonable suspicion because they are susceptible to innocent explanations is belied by well-established precedent. *See* D.C. v. Wesby, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."); United States v. Briggs, No. 21-3053, 2023 WL 3220911, at *2 (3d Cir. May 3, 2023).

[5] Again, the odor of marijuana the Trooper observed emanating from the car itself supplied probable cause to search the vehicle. *See* Ramos, 443 F.3d at 308. Additionally, the warrant details the dog sniff the Trooper ultimately conducted during which his K9 alerted signifying that drugs were located in the vehicle. Ex. 2, at 33:50–37:50; Ex. 4; *see* United States v. Pierce, 622 F.3d 209, 213 (3d Cir. 2010) ("[A] dog's positive alert while sniffing the exterior of [a] car provides an officer with the probable cause necessary to search the car."). Other observations detailed in the affidavit include, *inter alia*: travel on the I-80 corridor; the dark window tint; body tremors; Defendant's origin and destination locations; inconsistent travel stories; and marijuana viewed in plain sight when the Trooper asked the passenger to exit the vehicle. Ex. 4.

In short, the Court finds the Trooper's testimony credible and concludes that Defendant has failed to meet his burdens for the purposes of suppression. For all of the above reasons, Defendant's Motion to Suppress, as amended (**Docs. 40, 54**) is **DENIED**. A Pretrial Order setting forth a trial date and associated deadlines will follow.

IT IS SO ORDERED.

September 28, 2026

s/Cathy Bissoon
Cathy Bissoon
Chief United States District Judge

cc (via ECF email notification):

All Counsel of Record